UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NORTHLAND LLC, an Idaho limited liability company, and KAYLA BRIGGS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CONTRACTORS BONDING & INSURANCE COMPANY,<br><br>Defendant, | Case No. 4:21-cv-00281-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Pending before the Court are the parties' competing Motions for Summary Judgment (Dkts. 10, 11) as well as Defendant Contractors Bonding & Insurance Company's ("Contractors Bonding") Motion to Strike (Dkt. 16).

The Court held oral argument on February 4, 2022, and took the motions under advisement. Upon review, and for the reasons outlined below, the Court DENIES the Motion to Strike, DENIES Northland's Motion for Summary Judgment, and GRANTS Contractors Bonding's Motion for Summary Judgment.

# II. BACKGROUND

## A. Procedural Background

In their Complaint (Dkt. 1-2), Plaintiffs, Northland, LLC, and Kayla Briggs

(collectively "Northland"), bring three causes of action against Contractors Bonding: (1) breach of contract; (2) insurance bad faith; and (3) declaratory relief. *Id*. at 4–5. On July 1, 2021, Contractors Bonding removed the instant action to federal court. Dkt. 1.

As will be outlined in greater detail below, the purpose of this lawsuit is to determine whether, under the language of an insurance policy, Contractors Bonding should have defended Northland in two other lawsuits and whether Contractors Bonding is liable for the underlying damages at issue in those lawsuits.

As a matter of contract interpretation, the parties brought early cross-motions for summary judgment. Dkts. 10, 11. In support of its response to Contractors Bonding's Motion for Summary Judgment (Dkt. 14), Northland included the declaration of Kayla Briggs (Dkt. 14-1). Contractors Bonding subsequently moved to strike portions of that declaration. Dkt. 16.

The Court held oral argument regarding all motions on February 4, 2022, and took the matters under advisement.

**B. Factual Background**

Northland is a limited liability company, doing business as an "interior carpentry contractor." Dkt. 10-2, at 5. Contractors Bonding is an insurance company.

Northland entered into an insurance policy with Contractors Bonding, effective on February 1, 2019, under policy number G11FE0317 (the "Policy"). Relevant here, the Policy includes commercial general liability coverage and inland marine property coverage.

MEMORANDUM DECISION AND ORDER - 2

Northland rented shop space at 11084 N. Moonbeam Drive, Ucon, Idaho. On or about September 28, 2019, a fire started in the shop space and consumed the premises.

Contractors Bonding investigated the fire and paid Northland for certain damages and claims. During the course of the investigation, Northland notified Contractors Bonding of two complaints naming Northland and/or Kayla Briggs as defendants.

The first complaint, filed on December 19, 2019, was brought by Brad and Heather Ball against James Palmer[1] and Kayla Briggs, doing business as Northland, LLC. This case was filed in Idaho state court (the "Ball Complaint").

The second complaint was filed on December 12, 2019, in California state court. In that case, a company—Balboa Capital Corporation—sued Northland, Kayla Briggs, and James Palmer (the "Balboa Complaint").

After reviewing both complaints, Contractors Bonding determined there was no coverage under the Policy for the acts, omissions, or damages claimed by those parties against Northland and/or Briggs. Contactors Bonding issued a letter to Northland explaining its analysis and why it would be denying coverage as to the Ball and Balboa Complaints.

Northland disagreed with Contractors Bonding's assessment and filed this lawsuit, seeking a declaratory judgment that Contractors Bonding *is* contractually obligated to defend it in the Ball and Balboa Complaints and is liable for the underlying damages each complainant seeks.

---

[1] At one point, this individual is listed as "Lance Palmer." The Court understands this person to be James Palmer, a former business partner of Northland, LLC, and/or Kayla Briggs.

MEMORANDUM DECISION AND ORDER - 3

### III. LEGAL STANDARD

**A. Summary Judgment Standard**

Summary judgment is appropriate where the moving party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Id*. It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. Summary judgment is not appropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*,

477 U.S. at 249. The Court does not make credibility determinations at this stage of the litigation, as such determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). In considering a motion for summary judgment, the Court must also "view[] the facts in the non-moving party's favor[.]" *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017).

However, the Court need not accept allegations by the non-moving party if such allegations are not supported by sufficient evidence. *Anderson*, 477 U.S. at 249. Instead, the nonmoving party "must go beyond the pleadings and by its own evidence 'set forth specific facts showing that there is a genuine issue for trial.'" *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (quoting Fed. R. Civ. P. 56(e)); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (noting the nonmoving party must "identify with particularity the evidence that precludes summary judgment"). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (cleaned up).

The standard applicable to motions for summary judgment does not generally change if the parties file cross motions. *See, e.g.*, *Cady v. Hartford Life & Accidental Ins.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013). However, the Court must evaluate each party's motion on its own merits. *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

### B. Standard for Interpreting Insurance Policies

"It is well settled that a federal court exercising diversity jurisdiction must apply substantive state law." *Am. Triticale, Inc. v. Nytco Servs. Inc.*, 664 F.2d 1136, 1141 (9th

Cir.1981) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938)). Per Idaho law, when an insurance policy has language that "is clear and unambiguous, coverage must be determined as a matter of law, according to the plain meaning of the words used." *Farm Bureau Mut. Ins. Co. v. Eisenman*, 286 P.3d 185, 188 (Idaho 2012). In interpreting an insurance policy, Idaho courts look to the plain meaning of the words to determine if there are any ambiguities. *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins.*, 115 P.3d 751, 754 (Idaho 2005). A provision within an insurance policy is ambiguous if "it is reasonably subject to conflicting interpretations." *North Pac. Ins. Co. v. Mai,* 939 P.2d 570, 572 (Idaho 1997) (citing *City of Boise v. Planet Ins. Co.,* 878 P.2d 750, 754 (Idaho 1994)). Whether a contract is ambiguous is a question of law. *Trinity Universal Ins. Co. v. Kirsling,* 73 P.3d 102, 105 (Idaho 2003). As the Idaho Supreme Court has explained:

> To determine if an insurance policy is ambiguous, the general rules of contract law are applied subject to certain special canons of construction. These rules include looking at the plain language of the policy and reading the provisions within the context in which they occur in the policy. Additionally, unless contrary intent is shown, common, non-technical words are given the meaning applied by laymen in daily usage—as opposed to the meaning derived from legal usage—in order to effectuate the intent of the parties.

*Scout, LLC v. Truck Ins. Exch.*, 434 P.3d 197, 204 (Idaho 2019) (cleaned up). The burden is on the insurer to use clear and precise language if it desires to restrict the scope of its coverage. *Id*. If a policy term or provision is ambiguous, it is to be construed liberally, in favor of recovery, with all ambiguities being resolved against the insurer. *Id.* Ambiguities are resolved against the insurer because "insurance policies are contracts of adhesion, not subject to negotiation between the parties." *Id.* (citing *Moss v. Mid-Am. Fire & Marine Ins.*

MEMORANDUM DECISION AND ORDER - 6

*Co.*, 647 P.2d 754, 756 (Idaho 1982)).

## IV. ANALYSIS

In a situation, such as here, where a motion to strike has been filed, the Court typically addresses that matter up front as a determination regarding the admissibility of any of the challenged evidence could affect the Court's decision regarding the underlying motion. That said, the present situation is somewhat complicated. Accordingly, the Court will analyze and address Contractors Bonding's Motion to Strike and the parties' Motions for Summary Judgment simultaneously.

### A. Introduction

Northland opens it brief in support of its Motion for Summary Judgment by stating that this is a contract interpretation dispute. Dkt. 10-3, at 1. It contends that the Commercial General Liability form issued as part of the Policy requires that Contractors Bonding defend it in the Ball and Balboa lawsuits and cover the underlying damages at issue. The critical language from the Policy states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Dkt. 10-2, at 27. The term "damage" is not defined in the policy. The term "property damage" is defined as:

  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

MEMORANDUM DECISION AND ORDER - 7

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*Id.* at 41. Whether the Policy applies to damages is limited by numerous exclusions, listed as "a" through "q". *Id*. at 28–32. Exclusions "c" through "n" do not apply to damage by fire. *Id*. at 32. Northland argues the remaining exclusions likewise do not apply to damage caused by fire and, therefore, the Policy covers the damages in the Ball and Balboa lawsuits.

Contractors Bonding begins by taking a step back. While it disagrees with Northland's interpretation of certain contract language and the applicability of the various exclusions, it argues the overarching question is whether a duty to defend was ever triggered in the first place requiring that it step in and fight the Ball and Balboa lawsuits. In order to understand this argument, a review of the Ball and Balboa Complaints, and relevant caselaw, is helpful.

### B. The Ball Complaint (Dkt. 11-4)[2]

According to the allegations in the Ball Complaint, Brad and Heather Ball hired Northland to make and install kitchen cabinets as a part of a kitchen remodel. The Balls paid Kayla Briggs a deposit of $48,114.19.

Prior to final approval of the cabinet design and measurements—and allegedly prior to Northland beginning any work—the Balls requested the return of their deposit. According to the Ball complaint, Briggs told the Balls she would return their deposit. Later,

---

[2] The Court takes no position on the veracity of the claims in the Ball lawsuit. It is simply summarizing the complaint for reference as it applies to the present case.

MEMORANDUM DECISION AND ORDER - 8

however, Briggs allegedly told the Balls she had spent all of the deposit on supplies. Nevertheless, Briggs purportedly agreed to return the deposit because she could use the supplies for other projects. The Balls asked Briggs for an itemized list of the supplies she had purchased with the deposit funds, which, according to the Ball complaint, is something Briggs promised to provide, but never did. Then the fire occurred.

The Balls allege Briggs never returned any of their $48,114.19 deposit, despite promising to do so multiple times. The Balls sued Briggs, Northland LLC, and Palmer for breach of contract, unjust enrichment, conversion, violations of the Idaho Consumer Protection Act, and fraud.

### C. The Balboa Complaint (Dkt. 11-5)[3]

According to the allegations in the Balboa Complaint, Balboa provided Northland with equipment financing under two separate contracts for a total of $47,822.00.

The first equipment financing agreement is dated September 28, 2018, and the amount financed is listed as $27,115.00. The financing was for Northland's purchase of a panel saw and a conductor. The second equipment financing agreement is also dated September 28, 2018, and the amount financed is listed as $20,707.00. Under both agreements, Northland was to make monthly payments to Balboa. According to that complaint, the last payment made by Northland on either loan was in August 2019—the month prior to the fire.

Northland LLC is named as a "debtor" in each of the equipment financing

---

[3] The Court also takes no position on the veracity of the claims in the Balboa lawsuit. It is simply summarizing the complaint for reference as it applies to the present case.

MEMORANDUM DECISION AND ORDER - 9

agreements. Briggs and Palmer signed each agreement as guarantors. Balboa sued Northland LLC, Briggs, and Palmer for recovery of the remaining balance due under the financing agreements, or recovery of the securing collateral, which Balboa identified as personal property in its complaint.

### D. Discussion

In Idaho, "[t]he duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a *potential* for liability that would be covered by the insured's policy." *State of Idaho v. Bunker Hill Co.,* 647 F. Supp. 1064, 1068 (D. Idaho 1986) (emphasis in original). "So long as there exists a genuine dispute over facts bearing on coverage under the policy or over the application of the policy's language to the facts, the insurer has a duty to defend." *Scout*, 434 P.3d at 203. Nevertheless, if an insurer "believes it has no duty to defend . . . it may evaluate the claims and determine whether an arguable potential exists for a claim covered by the policy. If a complaint discloses no possibility of coverage, the insurer may properly decline to defend against it." *Id.* (cleaned up). Critically, when an insurer is making this determination, it need not "look beyond the words of the complaint to determine if a possibility of coverage exists." *Id.*

Contractors Bonding relies on the idea that it "[need not] look beyond the words of the complaint to determine if a possibility of coverage exists." *Id.* It postures that neither the Ball Complaint, nor the Balboa Complaint, mention the fire at all. Because it is not "clear" that the sought-after damages were the result of a fire, Contractors Bonding avers it properly denied coverage.

MEMORANDUM DECISION AND ORDER - 10

Furthermore, Contractors Bonding argue that neither the Ball Complaint nor the Balboa Complaint contain allegations of "property damages" cause by an "occurrence" as defined by the Policy. The Policy limits coverage to those sums the insured becomes legally obligated to pay as damages because of "property damage" where such damaged is caused by an "occurrence." Dkt. 10-2, at 27. Under the Policy, an "occurrence" is defined in pertinent part as an "accident." *Id*. at 40. "Property damage" is "[p]hysical injury to tangible property, including all resulting loss of use of that property. *Id*. at 41.

Contractors Bonding contends other specific exclusions apply in both the Ball and Balboa Complaints that would also exclude coverage. The Court will address those specific arguments in the following section, but must determine the threshold issue of when, if at all, a duty to defend was triggered.

Northland responds to Contractors Bonding's argument by noting that the absence of any mention of the fire is completely understandable. Because neither the Balls nor Balboa care *why* Northland can't pay the money they are demanding in their suits, there was no reason to mention the fire; it is irrelevant for their purposes. BUT, regardless of what the Balls and Balboa wrote in their Complaints, the reason Northland "may become liable for those claimed damages is *because* they lost the property, or the use of the property, when it *burned in the fire*." Dkt. 14, at 2 (emphasis added).

Northland continues by explaining that Contractors Bonding's reliance on caselaw—including from *Kootenai Cty. v. W. Cas. & Sur. Co.*, 750 P.2d 87, 90 (Idaho 1988)—stating it only need look at the four corners of any complaint to determine coverage, must be tempered with other language (including from *Kootenai Cty*) that

explains "if coverage (indemnification) depends upon the existence or nonexistence of facts outside of the complaint that have yet to be determined, the insurer *must provide a defense until such time as those facts are determined*, and the claim is narrowed to one patently outside the coverage." *Kootenai Cty.*, 750 P.2d at 90 (cleaned up) (emphasis added). Because the "facts" regarding *why* Northland failed to meet its obligations to the Balls and Balboa is undetermined, Northland argues Contractors Bonding must step in now until a final determination on those outstanding factors is reached. The Court disagrees.

To begin, it isn't so much the facts of this whole situation that are in dispute, but how those facts stack up against the relevant Policy provisions. Additionally, since *Kootenai Cty.*, the Idaho Supreme Court has reiterated that, "even if the facts behind the Complaints *might* lead to these causes of action, it is irrelevant . . . [because] an insurer does not have to look beyond the words of the complaint to determine if a possibility of coverage exists." *AMCO Ins. Co. v. Tri-Spur Inv. Co.*, 101 P.3d 226, 231 (Idaho 2004) (emphasis added) (citing *Hoyle v. Utica Mut. Ins. Co.*, 48 P.3d 1256 (Idaho 2002) and *Constr. Mgmt. Sys., Inc. v. Assurance Co. of Am,* 23 P.3d 142 (Idaho 2001)).

Northland continues to assert that Contractors Bonding's position rests almost exclusively upon the lack of a single word ("fire") in both complaints and that level of detail is not what the Court should be focused on. Instead, Northland contends the Court should uphold indemnification and that the details can be worked out later. Contractors Bonding explains it is a bit more complicated than Northland's assertions, but from a birds-eye view, that is correct: how would they have any idea that either lawsuit even related to the fire when a fire is not mentioned directly; or even indirectly?

Northland itself recognizes that neither the Balls nor Balboa really care *why* Northland hasn't performed in each situation; each simply wants the money it believes it is owed. As will be explained below, this is part of the reason why coverage does not exist—because the "damages" were not the result of the fire, but of Northland and/or Briggs's failure to perform under the terms of those other contracts. Said another way, the Balls and Balboa do not care whether the fire was the impetus for Northland's failure to meet the various obligations. Both are simply asking for contractual performance.

To be fair, Northland claims that the sole reason it could not perform in either situation was because of the fire and, as a result, coverage should apply. In essence, Northland claims there was a domino effect that resulted in the damages at issue and the first domino was the fire. The Court understands Northland's argument to a certain degree. Nevertheless, whether coverage exists is a legal question under the terms of the Policy.

It seems somewhat intuitive that the loss at issue in the Balboa Complaint was the result of the fire. The machines at issue were destroyed by fire. Therefore, *but for* the fire, they would not have been destroyed and Northland would presumably have continued making payments on the equipment loans. That said, Contractors Bonding already paid Northland under the inland marine provision of the Policy. During oral argument, neither party was able to tell the Court whether Northland passed those funds onto Balboa or not. In addition, even though the fire caused the demise of the equipment, the failure to perform the obligations of the contract rests on Northland and/or Briggs irrespective of the fire. And finally, as will be explained below, an applicable exclusion limits Northland's coverage. Contractors Bonding analyzed all of these factors before denying coverage.

MEMORANDUM DECISION AND ORDER - 13

The Balls situation is not as straightforward. Briggs contends that the money the Balls now seek was tied up in materials that were destroyed in the fire and, therefore, there is "a direct line of causation between the property damage caused by the fire and the lawsuit filed by the Balls." Dkt. 14, at 4. Law students spend a great deal of time discussing causation and the present circumstances presents an interesting fact scenario. It appears the Balls first asked Briggs to return their deposit on September 10, 2019—over two weeks before the fire. Dkt. 11-4, at 5. Had Briggs returned the deposit during that timeframe, this issue would not have arisen. Thus, the fire would be irrelevant. That said, because Briggs did not return the deposit right away (purportedly because the money was tied up in inventory or otherwise) the fire appears somewhat relevant because again, but for the fire, Briggs could have (presumably) met the Balls' demands prior to a lawsuit. Nevertheless, like the above, the real issue here is not that a fire occurred, but that Northland did not perform its obligations under its third-party contracts. Also, similar to the above, an exclusion precludes the coverage Northland now seeks. Contractors Bonding analyzed all of these factors before denying coverage.

The Court must now address Contractors Bonding's Motion to Strike. Dkt. 16. As part of its response to Contractors Bonding's Motion for Summary Judgment, Northland filed a declaration from Briggs. Dkt. 14-1. Briggs's declaration is not lengthy—fifteen (15) short statements. In sum, Briggs states that a fire took place, and postures that, but for the fire, Northland would have returned the Balls' deposit and continued payments to Balboa—thus negating both lawsuits. *See generally* Dkt. 14-1.

Contractors Bonding moves to strike each paragraph that mentions the fire—

MEMORANDUM DECISION AND ORDER - 14

paragraphs 5, 8, 9, 10, 11, 12, 13, 14, and 15—on the basis that each is irrelevant under Federal Rule of Evidence 402. Contractors Bonding lists each statement by Briggs and then provides an identical "reason" each should be stricken: "this information is irrelevant to the issue of whether Contractors Bonding's duty to defend is triggered in this matter, as set forth fully in the memorandum in support of Contractors Bonding's motion for summary judgment and reply in support thereof." Dkt. 16, at 3–5. In its estimation, the fire itself is "outside" the four corners of the Ball or Balboa Complaints and, accordingly, the Court should not consider that information.

The Court tends to agree that the information in Briggs's declaration should not be used to determine if Contractors Bonding should have stepped into the lawsuits years ago. Such would be akin to post-hoc rationalization. The Court's commentary above confirms this. Thus, the Court finds that Briggs's declaration cannot be used to support a conclusion that Contractors Bonding should have indemnified Northland. Even if Contractors Bonding had this information back then—which arguably it did; after all, it knew Northland believed there was coverage because of the fire—Contractors Bonding would not have changed its analysis.

That said, the second question before the Court today is whether coverage exists under the terms of the Policy. Briggs's declaration can be considered as part of that determination. Even if Contractors Bonding had stepped into the Ball and Balboa lawsuits right away, it would have likely bought a declaratory action seeking resolution of the disputed Policy terms (as Northland has here). And in that circumstance, the Court would consider evidence and testimony such as that presented by Briggs. In short, the Court

MEMORANDUM DECISION AND ORDER - 15

DENIES Contractors Bonding's Motion to Strike and will give the information in Briggs's declaration the weight it deems appropriate on the second question of coverage.

Ultimately, the Court determines that Contractors Bonding was correct in denying indemnification and coverage. This was not a situation where an insurer decided off-hand to reject a request for coverage. Contractors Bonding reviewed both complaints and issued an eleven page "memo" explaining why coverage was not available. The Court agrees that Contractors Bonding did not have to look outside the Ball and Balboa Complaints to determine coverage. Such would create an impossible task in most instances. It would be difficult for an insurer to ever know if it had gone "far enough" in investigating a claim. The Court agrees with the Idaho Supreme Court that the "words of the complaint" are an insurer's primary focus. Thus, as to the question of indemnification, the Court finds Contractors Bonding's actions were correct; no duty to defend was triggered. And the reason that duty was never triggered was because coverage was not available under the Policy. "If an exclusion in a business liability policy clearly and unambiguously excludes certain injuries, an insurer's duty to defend is not triggered." *Scout*, 434 P.3d at 203.

The Court turns next to the question of liability. Even though Contractors Bonding denied coverage originally based upon the "face" of the Ball and Balboa Complaints, the Court must now, at summary judgment, analyze the Policy language and determine whether liability exists.

To reiterate, the Court here is looking for whether the allegations related to

"property damage" were caused by an "occurrence."[4]

### 1. Ball Complaint

The Court has already outlined the salient facts from the Ball Complaint above. In short, the Ball Complaint does not allege "property damage" caused by an "occurrence" to trigger coverage under the Policy. Instead, the Ball Complaint alleges that Briggs and/or Northland accepted partial payment for the construction and installation of kitchen cabinets, never finished that job, and then never returned the deposit, despite multiple promises to do so. None of the allegations, however, relate, in any way, to "property damage."

Additionally, there is no coverage under the Policy for the contract-based claims in the Ball Complaint. The Policy expressly *excludes* coverage for liability assumed in a contract or agreement unless it meets the definition of an "insured contract." Dkt. 10-2, at 28. Under the Policy, an "insured contract" is limited to six (6) types of discrete agreements: a contract for lease of premises, a sidetrack agreement, any easement or license agreement, an obligation to indemnify a municipality, an elevator maintenance agreement, or a part of another contract under which the insured assumes tort liability of another party. *Id.* at 65. Any agreement Northland had with the Balls for the construction or installation of the cabinets is not an "insured contract" as defined by the Policy. *Id.* As such, there is no coverage for the contract-based claims in the Ball Complaint because the

---

[4] Under the Policy, "property damage" is "[p]hysical injury to tangible property, including all resulting loss of use of that property," and an "occurrence" is defined in pertinent part as an "accident." Dkt. 10-2, at 40–41.

aforementioned exclusion applies.

The Court also reiterates what it did before as it relates to the "occurrence" language vis-à-vis the Balls. The damages in the Balls' lawsuit existed before the fire—after all, Northland's failure to refund the Balls' deposit prior to the fire was its own doing. Did the fire exacerbate that failure? Maybe. According to Briggs, because Northland had capital (mostly in inventory) it could have paid the Balls but for the fire. Again, however, the "occurrence" that hampered Northland's ability to return the Balls deposit was not the fire, but Northland's use of the deposit money for inventory, not having enough cash in reserves to return the deposit, and/or not liquidating the inventory to pay the Balls back prior to the fire.

Northland argues that some of the causes of action in the Ball Complaint deal with contracts between the two parties and would be outside of Contractors Bonding's purview, but that Contractors Bonding should nonetheless defend them on all claims. Contractors Bonding disagrees, asserting this is all the more reason for them not to get involved—because not even all the claims at issue involve them. The Court agrees with Contractors Bonding on this point.

The Court finds that the plain language of the Policy is unambiguous in this circumstance. Coverage does not exist for the claims raised in the Ball Complaint.

2. *Balboa Complaint*

Contractors Bonding similarly argues that the Balboa complaint does not allege any property damage either, but rather is a lawsuit concerning Northland's breach of its financing agreement with Balboa. This is a correct, but narrow, reading of the Balboa

MEMORANDUM DECISION AND ORDER - 18

Complaint. Because Briggs has averred that, but for the fire, Northland would have kept paying under the financing agreements—and because the fire destroyed the property that is at the heart of the agreements—it appears there is property damage. Nevertheless, the Court must still determine if that damage is, by definition, covered under the Policy. Under the circumstances, the Court finds it is not.

The Policy excludes coverage for damages to personal property in the care, custody, or control of the insured. Dkt. 10-2, at 30. The exclusion applies to the personal property of others. *Id*. It also precludes coverage for any costs or expenses incurred by the insured, or any other person, organization, or entity to repair, replace, enhance, restore, or maintain that personal property for any reason, including damage to another's property. *Id*. Balboa's second and sixth causes of action seek the recovery of "personal property" covered by the aforementioned exclusion. As such, the personal property exclusion applies to such claims.

Also, like the Ball Complaint, the financing agreements at issue in the Balboa Complaint do not fall within the "insured contracts" definition and thus there is no coverage for any for liability assumed in the agreements. *Id*. at 65.

Similar to the Court's finding with respect to the Ball complaint, the Policy language is clear and there is no coverage for the damages at issue in the Balboa Complaint. The "property" at issue does not qualify as "property damage" under the Policy.

## V. CONCLUSION

The Court finds that because there was not an open question as to whether coverage was available as it relates to the Ball and Balboa lawsuits, Contractors Bonding was not required to step in and defend Northland. In accordance with Idaho Supreme Court

precedent, Contractors Bonding did not have to look outside the four corners of the Ball and Balboa Complaints and properly denied coverage even at the early stage of the respective Complaints' filings.

In addition, upon review of the Policy, the Court finds coverage is not, in fact, available to Northland in either lawsuit based upon the plain and unambiguous language of the Policy.

Accordingly, the Court grants summary judgment in Contractors Bonding's favor. Indemnification was not required based upon the substance of the Ball and Balboa Complaints and coverage does not exist under the terms of the Policy. Northland's other causes of action fall by the wayside in light of this determination because Contractors Bonding did not breach any contract or engage in insurance bad faith by taking the actions it took.

## VI. ORDER

1. Contractors Bonding's Motion to Strike (Dkt. 16) is DENIED.
2. Contractors Bonding's Motion for Summary Judgment (Dkt. 11) is GRANTED.
3. Northland's Motion for Summary Judgment (Dkt. 10) is DENIED.
4. The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.

DATED: May 17, 2022

David C. Nye
Chief U.S. District Court Judge